**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| MAHMOUD TAROKH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:21-cv-02719-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WAL-MART STORES EAST, LP, and | ) | |
| WALMART INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Jacquelyn D. Austin's Report and Recommendation ("R&R"), ECF No. 63, on defendants Wal-Mart Stores East, LP and Walmart Inc.'s (together, "Wal-Mart") motion for summary judgment, ECF No. 53. For the reasons set forth below, the court adopts the R&R and grants the motion.

## I.  BACKGROUND

This case arises out of plaintiff Mahmoud Tarokh's ("Tarokh") now-terminated employment at Wal-Mart. Prior to his termination, Tarokh was an assistant store manager ("ASM") at Wal-Mart's store in Walterboro, South Carolina (the "Walterboro Store"). ECF No. 54-25, Tarokh Dep. at 34:7–22. When Tarokh began working at Wal-Mart, Christopher Dodson ("Dodson") was the manager of the Walterboro Store. ECF No. 54-24, Dodson Dep. at 7:12–25, 42:5–15. Dodson testified that when he first started working with Tarokh, Tarokh's performance as an ASM was "average," id. at 8:22–23, and Tarokh was rated as a "solid performer" on his 2015, 2016, 2017, and 2018 annual work evaluations, ECF No. 54-2 at 3. However, Dodson said that, around 2018 or 2019, Tarokh's performance started dipping below average, and he had several discussions with

1

Tarokh about his performance issues.  Dodson Dep. at 8:25–10:5.  Tarokh was then rated "Below Expectations" on his March 30, 2019 performance evaluation.  ECF No. 54-2 at 3.  Dodson commented on the evaluation and stated that the poor review was due to Tarohk's failure to lead his subordinates to complete tasks and his struggle to perform the basic functions of his role to the company's standards.  ECF No. 53-15 at 2.  Dodson stated, "[Tarokh] has knowledge but lacks the drive to ensure this team is getting results on company program."  Id. at 2.

On August 10, 2018, Dodson issued Tarokh a "yellow" disciplinary action, which is a first written warning, for "Poor Business Judgment."  ECF Nos. 53-6 at 2; 53-14 at 10.  On November 28, 2018, Dodson issued Tarokh two "orange" disciplinary actions, which are second written warnings, for "Facility/Housekeeping Standards/Sanitation and for "Job Performance/Productivity."  ECF Nos. 53-6 at 2; 53-14 at 12.  On December 22, 2018, Dodson issued Tarokh a "red" disciplinary action, which is a third written warning, for "Sale of Firearms."  ECF Nos. 53-6 at 2; 53-14 at 14.

In September 2019, Dodson was transferred to another store, and Tabitha Poteat ("Poteat") became the manager of the Walterboro Store.  Dodson Dep. at 79:5–22; Tarokh Dep. at 42:13–43:13.  Not long after that, Poteat had multiple conversations with Tarokh about his various ongoing failures in the performance of his assistant store manager role.  ECF No. 53-14 at 16–17.  She noted the following infractions in a February 2020 yellow disciplinary action for "Job Performance/Productivity":

> On 12/22/2019 [Tarokh] left Breakpacks filled with returns and unworked break packs filled with live freight from previous night.  In addition overstock from the previous night was not binned.

> On 1/2/2020 Had a follow up conversation with [Tarokh] about continuing to fail to bin overstock, failing to clear BR of unworked Breakpacks.

2

On 1/16/2020 [Tarokh] failed to ensure we adhered to good neighbor standards by not ensuring we were clear behind the store. Pallets were left not consolidated or stacked. Bales were left by receiving doors. Bale area and behind the store were not swept or clear of trash.

On 1/24/2020 . . . Tarokh was observed operating PLE without wearing a safety vest. Additionally, [Tarokh] was the ON manager on duty when several pallets where put on the top steel without being properly shrink wrapped, or binned into location per One Best Way. He also personally placed items in steel without proper shrink wrap and not following OBW and the binning the product. When discussed with [Tarokh] on this particular morning, he simply states he will get someone to fix it. I instructed [Tarokh] to complete the pallets personally and to ensure all were completed prior to leaving. They were not completed. [Tarokh] continues to let his associates work with a lack of direction and makes decisions to do processes against OBW openly in front of his team and other associates which causes a disruption to our entire store.

Id. Tarokh acknowledged that he was given the opportunity to review and respond to Poteat's comments in his disciplinary action on February 16, 2020. Id. at 16.

Poteat recommended that Tarokh receive an annual performance evaluation of "below expectations" in 2020. ECF No. 54-26, Marhanka Dep. 20:8–22:5.[1] According to Wal-Mart's talent balancing initiative, an assistant manager who receives back-to-back "below expectations" performance evaluations is subject to termination. Marhanka Dep. at 103:8–21. Thus, because Tarokh had also received an annual performance evaluation of "below expectations" in 2019, Eric Ferguson, Wal-Mart's market human resource manager, instructed Poteat to deliver the following message to Tarokh on February 22, 2020:

"[Tarokh], you have rated Below Expectation and Development Needed for two consecutive years (FY19 and FY20). As we continue to move toward a High Performance Culture and being fit for the future, your performance over the past two years indicates that you are not performing at the level

---

[1] Virginia Marhanka ("Marhanka") was Wal-Mart's 30(b)(6) designee in this case. ECF No. 54-26, Marhanka Dep. Marhanka is a regional HR generalist for the health and wellness side of the company. Id. at 7:12–15.

needed to remain in role, therefore your employment is being terminated today."

ECF No. 53-19 at 3.  Tarokh's employment was then terminated on February 29, 2020. Tarokh Dep. at 121:6–9.

Tarokh, however, does not believe, his employment was terminated due to his negative performance reviews.  Rather, he claims that it was related to two injuries he sustained on the job.  On July 24, 2015, Tarokh twisted his knee and tore his meniscus while at work.  Id. at 108:8–109:3; ECF No. 54-3 (MRI results).  Then, on November 21, 2019, he injured his right shoulder at work, and a subsequent MRI showed a tear in his rotator cuff and acetabular labrum.  ECF Nos. 53-12 at 2; 54-4 at 2.  On January 21, 2020, Tarokh's physician ordered that he should not lift anything weighing more than ten pounds.  ECF No. 53-13 at 2.  On February 18, 2020, Tarokh requested short-term disability pay and a leave of absence for knee replacement surgery.  ECF No. 54-9 at 2, 9.

Shortly after his employment was terminated, Tarokh complained to Wal-Mart's ethics hotline about his being mistreated because of his injuries and his requests for medical leave of absence.  ECF Nos. 53-20 at 2–3; 53-21 at 2; 53-22 at 3.  Wal-Mart did an internal investigation into his claims and determined that his employment was terminated "because of his job performance [sic] for his last two evaluations rated below expectations."  ECF No. 53-22 at 3.

After that, Tarokh filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 7, 2020.  ECF No. 1, Compl. ¶ 115; ECF No. 7, Answer ¶ 115.  The EEOC issued a notice of right to sue letter on May 25, 2021, and Tarokh filed this action on August 23, 2021.  Compl. ¶¶ 116–117.  He alleges eight causes of action.  The first four concern violations of the Americans with Disabilities Act

4

(the "ADA"), 42 U.S.C. § 12101 et seq.: (1) failure to accommodate; (2) intentional discrimination; (3) retaliation; and (4) failure to promote. The fifth through eighth causes of action allege violations of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701, et seq.: (5) failure to accommodate; (6) intentional discrimination; (7) retaliation; and (8) failure to promote. See generally id. Wal-Mart moved for summary judgment on March 3, 2023, ECF No. 53, Tarokh responded in opposition on March 31, 2023, ECF No. 54, and Wal-Mart replied on April 14, 2023, ECF No. 57. The magistrate judge then issued the R&R, in which she recommended that summary judgment be granted, on November 13, 2023. ECF No. 63, R&R. Tarokh objected to the R&R on November 27, 2023, ECF No. 65, and Wal-Mart replied to his objections on December 26, 2023, ECF No. 68. As such, this matter is fully briefed and ripe for the court's review.

## II.  STANDARDS

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

5

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings. Id.

**B. Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### III.  DISCUSSION

Wal-Mart moved for summary judgment on each of Tarokh's claims.  ECF No. 53.  In response, Tarokh conceded his Rehabilitation Act claims and his failure to promote claim brought under the ADA.  ECF No. 54 at 35 n.13.  The magistrate judge therefore recommended granting summary judgment on those conceded claims before proceeding to Tarokh's remaining claims.  R&R at 6–7.  Likewise, the court follows suit and grants summary judgment on Tarokh's fourth, fifth, sixth, seventh, and eighth causes of action accordingly.

Before considering whether summary judgment is appropriate on the remainder of Tarokh's claims, the court will begin with a preliminary issue that will inform the court's analysis.  Wal-Mart argues that the magistrate judge correctly found that certain claims in Tarokh's complaint are time-barred.  ECF No. 68 at 17–18.  When a plaintiff asserts a claim under the ADA, he must do so in accordance with the enforcement procedures outlined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  42 U.S.C. § 12117.  Accordingly, before filing suit, the plaintiff must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC, or in some cases, an equivalent state agency.  Id. § 2000e-5.  In South Carolina, this charge

must typically be filed within 300 days after the alleged unlawful employment practice.[2]
Id. § 2000e-5(e)(1).  It is undisputed that Tarokh filed his charge with the EEOC on
October 7, 2020.  See Compl. ¶ 115; Answer ¶ 115.  Therefore, the magistrate judge
correctly found that Tarokh cannot base his ADA claim on any alleged unlawful
employment practices that occurred before December 12, 2019.[3]  R&R at 9.  Thus, when
reviewing Tarokh's claims, the court must set aside all alleged unlawful employment
practice that occurred prior to this date.  See Lewis v. City of Chicago, 560 U.S. 205, 211
(2010).

This preliminary issue settled, the court proceeds to consider Tarokh's remaining
objections.  Tarokh objects to the magistrate judge's recommendation that summary

---

[2] The standard timeframe for filing a charge is 180 days after the unlawful employment practice, but this deadline is extended to 300 days when state-law prohibits the alleged employment practice and the charge is initially filed with a state agency.  42 U.S.C. § 2000e-5(e)(1).  However, when the EEOC enters into a work-sharing agreement with a state agency, meaning the state agency and the EEOC serve as each other's agents for the purposes of receiving charges, a charge filed with the EEOC is considered to have been constructively filed with the state agency.  Gerald v. Olsten, 2021 WL 1394669, at *2 n.5 (D.S.C. Feb. 9, 2021), report and recommendation adopted 2021 WL 960509 (D.S.C. Mar. 15, 2021).  Courts in this district traditionally assume that there is a work-sharing agreement between the EEOC and the South Carolina Human Affairs Commission ("SCHAC"), meaning a charge filed with the EEOC triggers the 300-day timeframe as if it had been filed with the SCHAC.  Id.; Talent v. Comm'r of Pub. Works, 2014 WL 971747, at *3 (D.S.C. Mar. 11, 2014).

[3] Tarokh objects to this finding because Wal-Mart had not identified any specific claims that are subject to dismissal, and he argues that the court does not have Article III jurisdiction.  ECF No. 65 at 26.  However, Tarokh does not elaborate on this argument, and the only case he cites in support of this proposition is Whitmore v. Arkansas, 495 U.S. 149, 150 (1990).  ECF No. 65 at 26.  In that case, the Supreme Court held that a death row inmate did not have standing to pursue federal habeas relief on behalf of a different death row inmate, who had been convicted of far more heinous crimes that would make the petitioner's crimes seem better by comparison.  Whitmore, 495 U.S. at 151–54, 157.  So far as the court is aware, neither Wal-Mart nor Tarokh faces the possibility of capital punishment as a result of this lawsuit.  The Supreme Court's reasoning in Whitmore is therefore not relevant for the court's present purposes.

judgment be granted on each of his three remaining causes of action.[4]  ECF No. 65 at 2–26.  The court begins by considering Tarokh's objections directed at the recommendation as to his first cause of action: failure to accommodate under the ADA.

### A.  Failure to Accommodate

Establishing a prima facie case for failure to accommodate under the ADA requires a plaintiff to show

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ;  and  (4)  that  the  [employer]  refused  to  make  such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (alterations in original).

In its initial motion, Wal-Mart argued that summary judgment was appropriate because Tarokh had failed to establish that he was disabled.  ECF No. 53-1 at 14–16.  In response, Tarokh argued that both his 2015 knee injury and his 2019 shoulder injury were disabilities within the meaning of the ADA and that Wal-Mart's failure to accommodate either of these injuries could support his first cause of action.  ECF No. 54 at 15–24.  The

---

[4] In addition to Tarokh's objections targeted at the magistrate judge's disposition of each of his causes of action, Tarokh also provides a general objection to the magistrate judge's reliance on testimony from Wal-Mart's 30(b)(6) designee.  ECF No. 65 at 2–9. He argues that the magistrate judge should have disregarded certain portions of the 30(b)(6) designee's testimony for one reason or another, such as when those portions of the testimony were contradicted by other evidence in the record or when they violated the Federal Rules of Evidence.  See id. at 4–9 & n.2.  Rather than addressing the magistrate judge's reliance on Wal-Mart's 30(b)(6) designee's testimony in a general sense, the court finds that it will be more efficient to determine whether the magistrate judge properly relied on specific portions of the 30(b)(6) designee's testimony when the testimony is relevant to deciding whether to grant summary judgment on Tarokh's claims.  In other words, the court recognizes that Tarokh objects to the magistrate judge's reliance on the 30(b)(6) designee's testimony, but rather than analyzing that objection separately, the court considers it as part of its analysis on whether the magistrate judge correctly recommended granting summary judgment on each of Tarokh's remaining causes of action.

magistrate judge recommended summary judgment on this claim after finding that (1) Tarokh's knee injury is not a disability within the meaning of the ADA and (2) Tarokh failed to establish that Wal-Mart refused to accommodate his shoulder injury.  R&R at 12–16.  Tarokh objects to both conclusions.  ECF No. 65 at 9–18.  The court will consider each injury in turn.

### 1. Tarokh's Knee Injury

The magistrate judge found that Tarokh's knee injury failed to qualify as a disability under the ADA.  R&R at 12.  A disability under the ADA is "(1) a physical or mental impairment (2) that <u>substantially limits</u> (3) one or more major life activities." <u>Israelitt v. Enter. Servs. LLC</u>, 78 F.4th 647, 653 (4th Cir. 2023) (emphasis added) (internal quotation marks omitted) (quoting 42 U.S.C. § 12102(1)(A)), <u>cert. petition docketed</u>.  The magistrate judge recognized that Tarokh tore his meniscus and that doctors had determined he would likely require surgery.  <u>Id.</u>  She also noted that Tarokh testified that the pain in his knee hindered his ability to run, walk, and participate in sports.  <u>Id.</u>  She pointed to Tarokh's testimony that his job was "all physical" and required him "to walk – I don't know – 400 miles a day, every day, running around a circle, chasing people."  <u>Id.</u> at 13 (quoting Tarokh Dep. at 39:7–19).  She explained that there was no evidence in the record to indicate Tarokh ever scheduled a follow up evaluation with an orthopedist or that he ever scheduled his knee surgery.  <u>Id.</u> at 13–14.  From this, she determined that no reasonable jury could determine that Tarokh's knee injury <u>substantially limited</u> any major life activity and that it, therefore, did not constitute a disability under the ADA.  <u>Id.</u> at 13–15.

Tarokh objects and argues that his knee injury did substantially impair his ability to walk, kneel, and bend.  ECF No. 65 at 9 (citing ECF No. 54-13, Tarokh Aff.).  He asserts that Congress amended the ADA in 2008 "to broaden the definition of disability to make it easier for individuals to be covered under the ADA."  ECF No. 65 at 9.  Yet he does not cite any caselaw to further his claim that the magistrate judge misapplied the standard.  See id. at 9–11.  In fact, he articulates that the magistrate judge's decision is based on reasoning applied in various district court decisions and that the magistrate judge correctly applied the standards articulated in those cases.  Id. at 11.  He simply says that both the magistrate judge and these prior decisions are wrong because they "are not consistent with Congressional intent behind the [2008 Amendments] or the rules of construction."  Id.

Tarokh is correct that Congress amended the ADA in 2008 to facilitate a broader construction of the term "disability."  Israelitt, 78 F.4th at 654–55.  He is also correct that the magistrate judge's reasoning in this case is supported by district court caselaw, all of which was decided since passage of the 2008 Amendments.  See R&R at 14 (first citing Everett v. Horry Cnty. Police Dep't, 2023 WL 6307401, at *5 (D.S.C. Sept. 28, 2023); and then citing Johnson v. Lexington Cnty. Sch. Dist. Two, 2019 WL 5542598, at *4 (D.S.C. Oct. 28, 2019)).  However, these are not the only cases cited by the magistrate judge.  She also relies on the Fourth Circuit's decision in Israelitt, 78 F.4th at 654, the first case in which the Fourth Circuit decided just how broad the terms of the ADA are to be construed after the 2008 Amendments.  R&R at 14–15.  In that case, the Fourth Circuit acknowledged that Congress intended to broaden the construction of the ADA but explained that the 2008 Amendments "did not change the statutory requirement that a

11

disability 'substantially limit' the plaintiff." Israelitt, 78 F.4th at 655. Thus, the court finds that the magistrate judge correctly applied the construction of the ADA that the Fourth Circuit announced in Israelitt. See R&R at 14–15. As such, the court agrees with the magistrate judge and finds that Tarokh's knee injury does not meet the definition of a disability under the ADA.

### 2. Tarokh's Shoulder Injury

Unlike Tarokh's knee injury, the magistrate judge found that there was a genuine issue of material fact as to whether his shoulder injury qualifies as a disability under the ADA. R&R at 15. An MRI in January 2020 revealed that Tarokh had tears in his rotator cuff and labrum, and his physician noted that he would likely need surgery. ECF No. 54-4 at 2–3. Based on these injuries, his physician determined that he should not lift more than ten pounds. ECF No. 53-13 at 2. The magistrate judge determined that a reasonable jury could determine that this restriction substantially limits Tarokh's ability to lift and meets the definition of a disability under the ADA. R&R at 15–16.

The magistrate judge, nevertheless, went on to recommend granting summary judgment on Tarokh's failure to accommodate claim because Tarokh failed to establish a genuine issue of material fact over whether Wal-Mart refused to accommodate his injury and lifting restriction. R&R at 16. In reaching this conclusion, she relied heavily on the testimony of Wal-Mart's 30(b)(6) designee, Virginia Marhanka ("Marhanka"). R&R at 16–19. Marhanka testified multiple times that Tarokh, as an ASM, could avoid lifting more than ten pounds by simply delegating lifting responsibilities to other employees or by using tools such as a forklift. Marhanka Dep. at 64:21–23; 67:16–17; 129:22–25. Tarokh also testified that ten or twelve people reported to him in 2019. Tarokh Dep. at

41:13–19.  From this, the magistrate judge found that Wal-Mart was not requiring Tarokh to lift more than ten pounds in violation of his lifting restriction and that it was, therefore, not refusing an accommodation.  R&R at 15–19.

Tarokh objects and argues that there is a genuine issue of material fact as to whether Wal-Mart respected his need for an accommodation.  ECF No. 65 at 11–18.  His argument is mostly based on his assertion that the magistrate judge improperly relied on Marhanka's 30(b)(6) deposition testimony.  ECF No. 65 at 2–9, 13–17.  He also argues that, rather than providing him an accommodation, Wal-Mart simply said that he did not need one because he could delegate his lifting tasks, and he asserts that Wal-Mart has pointed to no evidence that it "honored [his] lifting restriction by 'allowing' him to delegate lifting tasks."  Id. at 12–13.  Finally, he identifies the 2020 disciplinary incident when he claims he was admonished for delegating tasks, and he argues that this shows that Wal-Mart was not allowing him to delegate tasks to avoid his lifting restriction.  Id. at 17–18.  The court does not find these arguments persuasive.

First, the court will address why the magistrate judge properly credited and relied upon Marhanka's deposition testimony.  Tarokh argues that the magistrate judge should not have relied upon Marhanka's testimony for two reasons.  He begins by claiming that the deposition testimony should not have been relied upon because it would not be admissible at trial, and he says that Marhanka's testimony would not be admissible at trial because it was not based on personal knowledge and no foundation was laid.  ECF No. 65 at 3–9, 13–14 (citing Fed. R. Civ. P. 30(b)(6)).  Moreover, he argues that Marhanka, as Wal-Mart's 30(b)(6) designee, is an interested witness, so her testimony should not have been credited for summary judgment purposes when it is contradicted by

other evidence in the record, such as Wal-Mart's policies and Tarokh's own testimony. Id. at 14–18.

As for his argument that Marhanka's testimony was inadmissible, it is true that evidence relied upon for summary judgment must be capable of being put in an admissible form. Byrd v. Ta Chen Int'l, 2021 WL 1890502, at *2 (D. Md. May 11, 2021). However, contrary to Tarokh's assertions, the Fourth Circuit has been clear that the testimony of a 30(b)(6) designee need not be based on personal knowledge to be admissible. Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 193 (4th Cir. 2019) ("Rule 30(b)(6) deponents testify on behalf of entities, not themselves, and often do so based on careful advance preparation, not personal knowledge."); accord United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.) ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents."), aff'd 166 F.R.D. 367 (M.D.N.C. 1996). Consequently, Tarokh's argument that Marhanka's testimony was inadmissible for lack of personal knowledge fails.

Beyond that, the court finds that the proper foundation was laid for Marhanka's testimony. The portions of Marhanka's testimony relied upon by the magistrate judge focused on the role of the ASM at Wal-Mart and specifically the authority of the ASM to delegate tasks to other employees. See Marhanka Dep. at 64:21–23; 67:16–17; 129:22–25. Marhanka has worked as an HR generalist on health and wellness for Wal-Mart since 2015. Id. at 7:14–9:9. Before that, she was a Wal-Mart store manager for twenty years, and before that, she was an HR manager as an hourly employee. Id. at 9:4–6. She indicated that she prepared for the deposition by reviewing Wal-Mart's policies and procedures but that she did not talk to any of the employees involved in the incident. Id.

14

at 10:12–11:12.  The court finds that Marhanka was well qualified to discuss Wal-Mart's policies on the role of the ASM and specifically whether Tarokh, as the ASM, could delegate tasks to other employees.  See id.; Jordan, 921 F.3d at 193–94.

Second, the court finds that the magistrate judge properly credited and relied upon Marhanka's testimony because it is not materially contradicted by the other evidence in the record.  Tarokh specifically argues that Wal-Mart policy contradicts the testimony because lifting twenty-five pounds "without assistance" is listed as part of the role of the ASM.  ECF No. 65 at 14 (citing ECF No. 53-11 at 3).  However, those same policies also confirm that the ASM may assign tasks to other employees.  ECF No. 53-11 at 2–3.  Therefore, this job description does not contradict Marhanka's testimony that Tarokh could have delegated his lifting tasks to other employees.

Moreover, Marhanka's testimony is not materially contradicted by Tarokh's testimony.  Tarokh testified that his job is "physical" and that sometimes boxes must be lifted when a forklift or other machinery is unavailable or when there is no one around who could do the task for him.  Tarokh Dep. at 41:1–6.  In pertinent part, he explained that, "sometimes you don't have the access to those machinery.  Sometime you don't have nobody to help you.  It has to be done.  You cannot just -- if you got two boxes, you cannot just leave the one 40-puond on the floor and move the 25-pound, so."  Id. at 41:2–6.  Even so, this testimony does not contradict Marhanka's testimony about the proper role of the ASM as a matter of Wal-Mart policy, and it does not indicate that Wal-Mart required Tarokh to violate his lifting restrictions at any point either after suffered his shoulder injury or after his physician advised the lifting restriction.  See id.  Thus, the

magistrate judge properly credited Marhanka's testimony about Wal-Mart's policies regarding ASMs.[5]

As for Tarokh's argument that Wal-Mart has produced no evidence that it ever provided him an accommodation, Tarokh has improperly placed the burden on Wal-Mart. It is Tarokh's burden to prove his case. See Anderson, 477 U.S. at 249.

Finally, the court does not agree with Tarokh that the January 24, 2020 disciplinary incident shows that Wal-Mart was not accommodating Tarokh's disability. According to Poteat's disciplinary action report, Tarokh was the overnight manager working "when several pallets where [sic] put on the top steel without being properly shrink wrapped, or binned into location." ECF No. 53-16 at 2. When Poteat discussed the issue with Tarokh, he stated that he would "get someone to fix it," but Poteat instructed him to "complete the pallets personally." Id. at 3. Tarokh argues that this shows that Wal-Mart was not allowing him to delegate tasks. ECF No. 65 at 17–18. However, Tarokh testified that this task involved his using a forklift, and Tarokh has not pointed to any evidence to show that using a forklift violated his lifting restrictions. Tarokh Dep. at 98:24–25. Thus, this incident does not indicate that Wal-Mart failed to

---

[5] The court recognizes that, in various places scattered throughout his objections, Tarokh takes issue with the magistrate judge's reliance on Marhanka's testimony in other instances. See ECF No. 65 at 2–9, 12–14, 17–18, 20. Yet he simultaneously cited Marhanka's deposition testimony throughout his response in opposition to summary judgment and his objections to the R&R. See, e.g., ECF Nos. 54 at 20 ("Indeed, the 30(b)(6) designee agreed that a doctor's note with restrictions related to the disability may be considered a request for accommodation."); 68 at 23. It is therefore difficult to recognize when Tarokh finds the testimony objectionable and when he does not. In any event, the portions of Marhanka's testimony that Tarokh finds objectionable appear to predominantly concern the role of ASM. The court does not agree with Tarokh on these objections for the reasons set forth above. To the extent Tarokh objects to other portions of Marhanka's testimony, the court finds that those objections would not alter the magistrate judge's conclusions, and the court declines to reach them.

accommodate Tarokh's lifting restrictions. For these reasons, the court finds that there is no genuine dispute of material fact, adopts the R&R, and grants summary judgment on Tarokh's claim for failure to accommodate.[6]

### B. Discrimination and Retaliation Claims

To prevail on either his ADA discrimination or retaliation claim, Tarokh may either prove his claim through direct evidence or he may proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Laird v. Fairfax Cnty., 978 F.3d 887, 892 (4th Cir. 2020). Tarokh does not argue that he has direct evidence of discrimination or retaliation, so the magistrate judge appropriately applied the McDonnell Douglas framework. R&R at 19 & n.16; see ECF No. 54 at 24. Under that framework, Tarokh must first establish a prima facie case of discrimination or retaliation. See Laird, 978 F.3d at 892; McDonnell Douglas, 411 U.S. at 802. If he establishes a prima facie case, the burden shifts to Wal-Mart to provide a legitimate, nondiscriminatory reason for its conduct. See McDonnell Douglas, 411 U.S. at 802. If Wal-Mart provides such a reason, "the burden then shifts back to [Tarokh] to prove by a preponderance of the evidence that the stated reason for the adverse

---

[6] Additionally, Tarokh testified in his deposition that he never requested an accommodation for his injuries. Tarokh Dep. at 113:5–6, 130:12–15. Tarokh now argues that this testimony is inadmissible because "'request for accommodation' is a legal term of art and no foundation was laid that he understood the legal definition of that term." ECF No. 65 at 3. However, while the magistrate judge noted this portion of Tarokh's testimony, she rested her ultimate conclusions on Tarokh's failure to produce evidence demonstrating the other elements of his claim. See R&R at 13. Thus, the court declines to reach the issue of whether Tarokh's testimony is admissible or whether he waived his right to object to the use of this testimony when he failed to do so during the deposition.

employment action is a pretext and that the true reason is discriminatory or retaliatory." See Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016).

The magistrate judge assumed, without deciding, that Tarokh could establish a prima facie case of discrimination and retaliation. R&R at 20 (citing Mandengue v. ADT Sec. Sys., Inc., 2012 WL 892621, at *16 (D. Md. Mar. 14, 2012) ("[I]t is a common practice in the Fourth Circuit to assume, without deciding, that the plaintiff has established a prima facie case in cases where the employer has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment.")). She then went on to recite Tarokh's history of disciplinary problems and found that Wal-Mart had produced evidence to show that Tarokh was terminated because of his disciplinary issues and as part of Wal-Mart's talent-balancing initiative. Id. at 20–21. Thus, Wal-Mart had proffered a legitimate, nondiscriminatory and nonretaliatory reason for terminating Tarokh, and the burden shifted back to Tarokh to show that Wal-Mart's articulated reason was merely pretextual. Id. The magistrate judge then found that Tarokh had not demonstrated that there was a genuine issue of material fact on the question of pretext, and she recommended granting summary judgment accordingly. Id. at 22.

Tarokh objects and argues that there is a genuine issue of material fact over whether Wal-Mart's articulated reason was pretextual. ECF No. 65 at 18. First, he argues that the timing of his termination is evidence of pretext. Id. at 18–22. He says that Poteat learned of his disability request on February 19, 2020, that Poteat gave him a negative review three days later, and that Poteat used this negative review as reason to terminate Tarokh's employment. Id. at 18 (citing ECF Nos. 54-2; 54-7 at 2). Yet, as the magistrate judge explained, the record is clear that Tarokh had a history of disciplinary

issues long before Poteat learned of his February 2020 request. For instance, Dodson rated Tarokh as performing "Below Expectations" in February 2019, Dodson issued multiple disciplinary infractions to Tarokh in 2018, and Poteat issued multiple disciplinary infractions to Tarokh in late 2019 and January 2020.[7] ECF Nos. 53-14 at 10–20; 53-15 at 2–3.

Second, Tarokh argues that Wal-Mart misrepresented facts in its position letter to the EEOC and that a jury could infer discriminatory intent from these lies. ECF No. 65 at 22–23. He says that the EEOC position letter contained inaccuracies regarding the timing of when Poteat learned about Tarokh's request for a leave of absence and assertions about the ASM's role, which he claims conflicted with Wal-Mart's ASM job description. ECF No. 65 at 22–23. Tarokh pointed to these same discrepancies in his response in opposition he filed to the motion which the magistrate judge considered in reaching her recommendations. ECF No. 54 at 32. The magistrate judge found that these discrepancies had "nothing to do with [Wal-Mart's] purported reason for terminating [Tarokh]." R&R at 29. Moreover, the magistrate judge also noted that she was unconvinced that these statements—particularly Tarokh's characterization of the ASM job responsibilities—were inconsistent. Id. at 30 n.26. The court agrees. Notably, Wal-Mart's position letter articulates the same stance that it has maintained throughout this litigation: Tarokh's employment was terminated because he had two consecutive annual evaluations of "Below Expectations." ECF No. 54-1 at 6. The purported inconsistencies

---

[7] Tarokh also faults Wal-Mart for being unable to produce any evidence showing that it had decided to give Tarokh a negative evaluation prior to his February 19, 2020 accommodation request. ECF No. 65 at 19–21. However, it is Tarokh's burden to produce evidence showing that there is a genuine issue of material fact.

identified by Tarokh either reflect his subjective disagreement with Wal-Mart's position or are not probative of whether Wal-Mart's articulated reasons for his termination were pretextual.[8]  See George v. Florence One Schs., 2023 WL 2394178, at *11 (D.S.C. Jan. 10, 2023) ("While material inconsistencies [in an EEOC position letter] are probative of pretext, 'minor discrepancies or elaborative discussion will not suffice—a plaintiff must point to actual conflicting explanations which relate to the core substance of the employer's articulated justification.'" (quoting Propst v. HWS Co., 148 F. Supp. 3d 506, 528 (W.D.N.C. 2015)), report and recommendation adopted as modified 2023 WL 2042170 (D.S.C. Feb. 16, 2023).

    Third, Tarokh argues that, contrary to Wal-Mart's arguments, his performance prior to his disability was good, and his disciplinary record was not a reason for his termination under Wal-Mart's policies.  ECF No. 65 at 23–26.  It is true that Marhanka testified that, as of February 2020, Tarokh only had one active disciplinary action and that the low level of this action did not make him eligible for termination.  Marhanka Dep. at 27:23–29:12.  However, she went on to testify that these sorts of disciplinary actions are not the only reason an employee might be terminated and that Tarokh was terminated according Wal-Mart's talent balancing initiative because he was about to receive his second consecutive "Below Expectations" annual review.  Id. at 28:25–29:4. Moreover, as the magistrate judge pointed out when faced with this same argument, Wal-

---

[8] Tarokh argues in his objection that Wal-Mart has provided inconsistent reasons for his termination because he notes that Poteat listed his reason for termination as "[r]efused to [p]erform [j]ob [d]uties."  ECF No. 65 at 25 (citing Marhanka Dep. at 56:4–60:3).  The reason Tarokh received the negative performance evaluations, which ultimately were fatal to his employment, was because he consistently failed to do his job. ECF Nos. 53-14 at 16–20; 53-15 at 1.  The court is not convinced that this is an inconsistent position.

Mart cited Tarokh's "disciplinary record to support [its] general proposition that [Tarokh's] performance was substandard and that, even with opportunities for correction, it did not improve." R&R at 31. Based on its own review of the record, the court is convinced that the magistrate judge is correct. Wal-Mart has articulated that Tarokh was terminated because he received "Below Expectations" on his performance evaluations for two consecutive years. ECF No. 53-15 at 2; 53-19 at 3; 54-2 at 3. This accords with its talent-balancing initiative, which mandated that a manager who received back-to-back "below expectations" ratings would be terminated. Marhanka Dep. at 103:8–21.

Altogether, Wal-Mart has articulated a lawful, nondiscriminatory and nonretaliatory reason for discharging Tarokh, and Tarokh has not pointed to evidence from which a reasonable jury could find that Wal-Mart's proffered explanation was false and that its true motivation was discriminatory or retaliatory in violation of the ADA. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). As such, the court adopts the magistrate judge's recommendation and grants summary judgment on Tarokh's discrimination and retaliation claims.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R in full and

**GRANTS** Wal-Mart's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 29, 2024**
**Charleston, South Carolina**